456 P.2d 925

Jerry CAMACHO, a minor by his mother and best friend Helen Camacho, Appellant,

v.

Henry M. GARDNER and Jane Doe Gardner, husband and wife, and Ralph T. Badilla, Appellees.

No. 9389–PR.

Supreme Court of Arizona.

In Banc.

June 26, 1969.

William Messing, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, David Pakula, Tucson, for appellees.

McFARLAND, Justice.

This case is before us on a petition for review of a decision of the Court of Appeals affirming an order of the superior court setting aside a judgment and a default. The opinion of the Court of Appeals is reported in 6 Ariz.App. 590, 435 P.2d 719, as modified by a supplemental opinion in 7 Ariz.App. 483, 441 P.2d 249.

Plaintiff, Jerry Camacho, was a passenger in an automobile driven by Ralph Badilla. That car collided with a truck driven by Henry Gardner, and plaintiff was injured. He filed suit against both drivers. Gardner and his wife (hereinafter referred to as defendants) were served, but Badilla could not be found. The Gardners were covered by a liability insurance policy with Farmers Insurance Exchange, but they neglected to notify the insurer that they had

been served. A default and a default judgment for $50,000 were entered in favor of plaintiff. The insurer's attorney heard about the judgment, and, within seven days, filed a motion to vacate it. After a hearing, the trial court granted the motion, and plaintiff appealed.

The question presented is whether the lower court abused its discretion under the facts in the instant case.

On or about December 22, 1966, personal service was made upon Henry Gardner and his wife. At the time of service on the Gardners, the process server told defendants to give the papers to the insurance company. The defendants failed to take any action. The reasons given are set forth in the affidavit of defendant Henry M. Gardner. Omitting the formal parts, he stated:

"2. That on or about December 22, 1966, I was served at my apartment with Summonses and Complaints for myself and wife by a person who identified himself as a process server; that at the time service was made I was told by the process server that I should give these papers to my insurance company and that I then inquired of the process server why he, the process server, did not personally serve the papers upon the insurance company and was informed that his instructions were only to serve Mr. and Mrs. Gardner.

"3. That I placed these papers with other papers and did not inform my lawyer or insurance company of them and forgot them until Friday, January 13, 1967, when I was contacted by an adjuster from Farmers Insurance Exchange and then found the papers in a cupboard at my apartment.

"4. That prior to being served with the Summonses and Complaints, I received a letter from Attorney Messing informing me that he represented the plaintiff Camacho and advising me to refer the letter either to my attorney or my insurance company; that said letter was received sometime in November or December, but the exact date is not known and the letter is now lost; that upon receipt of the letter, I called my attorney David Pakula, who advised me that I might expect to be served with papers and when I was served I should deliver them to the Farmers Insurance Exchange and further advised me that he would contact the adjuster for Farmers Insurance Exchange and advise them of the receipt of this letter."

Prior to the filing of this suit defendants had retained their own attorney, David L. Pakula, who negotiated and settled an uninsured motorist claim (Badilla was not insured) against defendants' insurance carrier, Farmers Insurance Exchange (hereinafter referred to as Farmers). About November 17, 1966, defendants received a letter from plaintiff's attorney advising them, among other things, to forward it to their insurance carrier. Mr. Gardner called his attorney, who told him that

"he would probably be sued and if he was served with papers he should immediately take them to the insurance company."

Mr. Pakula then called Farmers, and notified them of receipt of the letter. He also called plaintiff's attorney, and stated to him that defendants were not at fault.

The affidavit of Farmers' adjuster, omitting the formal parts, stated:

"2. That on or about November 2, 1966, I was assigned the accident occurring October 30, 1966, involving our named insured Henry M. Gardner and Ralph T. Badilla; that I first attempted to determine if there was any insurance upon the Badilla vehicle and determined that this vehicle was uninsured; I personally informed Mr. Gardner of this fact and was advised that Mr. Gardner had employed Mr. David Pakula to represent his interests; that I contacted Mr. Pakula and by agreement obtained a recorded statement concerning the facts and his injuries from Mr. Gardner at Mr. Pakula's office on November 11, 1966; that I personally did not have any further

contact with Mr. Gardner until Friday, January 13, 1967, when he was contacted at his home by Mr. Don McClure, the branch claims manager, and myself after receiving information that a default judgment had been rendered against him.

"3. That on or about November 21, 1966, I was informed by Mr. Pakula that Mr. Gardner had received a letter from Mr. Messing concerning his representation of Jerry Camacho; that following receipt of this information I did not have contact with Mr. Messing."

To complete the background, we set forth the greater part of the affidavit of defendants' attorney, Mr. Pakula:

"2. That on or about November 3, 1966, your affiant was employed by Mr. Henry M. Gardner to represent his interests arising out of an automobile accident occurring October 31, 1966; that on or about November 7, 1966, he determined that the Badilla vehicle was uninsured and at that time informed Mr. Terry Wetmore of the Farmers Insurance Exchange which insured Mr. Gardner that I was presenting a claim under the uninsured-motorist coverage afforded Mr. Gardner; that negotiations commenced and a settlement of the uninsured-motorist claim was made on or about December 16, 1966.

"3. That prior to the settlement of the uninsured-motorist claim Mr. Gardner called and informed me that he had received a letter from William Messing, an attorney representing Jerry Camacho, and during that phone conversation I informed Mr. Gardner that he would probably be sued and if he was served with papers he should immediately take them to the insurance company and I told him that I would call the insurance company and inform them of the receipt of this letter; that on the same day, I called Mr. Wetmore at Farmers and informed him of the receipt of the letter by Mr. Gardner.

"4. That after the telephone conversation with Mr. Gardner I talked to Mr. Messing and told him that I represented Mr. Gardner and that Mr. Gardner had received his letter and that Mr. Gardner was not at fault in this accident.

"5. That on Friday, January 13, 1967, your affiant was informed by his partner Mr. Hirsch that Mr. Messing had informed him in the elevator that he had entered a default and taken a default judgment against Mr. Gardner; that this was the first knowledge I had that a lawsuit had been filed against Mr. Gardner; that I immediately called Farmers Insurance Exchange and informed Mr. Don McClure of this information."

It is apparent that Farmers actively engaged in negotiation and settlement of an uninsured-motorist claim made by defendant under Farmers' policy, but took no action on the potential claim by the plaintiff under the liability clauses of its policy. However, Farmers was galvanized into immediate activity when, on January 13, 1967, they were advised by Mr. Pakula that the plaintiffs had taken a default, and a judgment thereon in the amount of $50,000 earlier that same day. Seven days later—on January 20, 1967—Farmers, on behalf of defendants, filed a motion under Rule 60(c), Rules of Civ.Proc., 16 A.R.S., seeking to set aside the default and the judgment. The Pima County Superior Court had a hearing on the motion on January 30, 1967, and that court entered an order the following day setting aside the default and default judgment and ordered a trial on the merits.

We are confronted with the question of whether an insurance company is entitled to have a default set aside under this set of facts. In Jenkins v. Mayflower, 93 Ariz. 287, 380 P.2d 145, we held that "an omnibus clause is a part of every motor vehicle liability policy, by whatever name it may be called."

In Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98, in discussing the failure of the insured to notify the insurer of the

filing of a suit against the insured as required by its policy, we stated:

"In Schecter v. Killingsworth, supra [93 Ariz. 273, 380 P.2d 136], we further stated that the primary purpose of the Financial Responsibility Act was 'the providing of security against uncompensated damages arising from operation of motor vehicles on our highways.' The foregoing statements were quoted and relied upon in Jenkins v. Mayflower, supra, and the two cases, when read in conjunction, fully express the public policy of this state in regard to judicial implementation of the Financial Responsibility Act. The holding of Jenkins v. Mayflower that a restrictive endorsement negating coverage could not be relied on by the insurer where it conflicted with the coverage required by the omnibus clause read into *every* automobile liability policy by the Financial Responsibility Act, was reiterated by this court in Pacific Indemnity Co. v. Hamman Wholesale Lumber and Supply Co., Inc., 95 Ariz. 362, 390 P.2d 897.

\*   \*   \*   \*   \*   \*

"Financial contends, however, that the effect of this statute, when applied to the facts of the instant case, will result in a denial of due process violative of ·Art. II, § 4, of the Arizona Constitution, A.R.S., ·and of the Fourteenth Amendment of the Constitution of the United States of America. \* \* \*

\*   \*   \*   \*   \*   \*

"It seems to be settled that after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer. Michel v. American Fire & Casualty Co., 5 Cir., 82 F.2d 583; Brandon v. St. Paul Mercury Indemnity Co., 132 Kan. 68, 294 P. 881, 83 A.L.R. 673; 22 Appleman, Insurance Law and Practice, § 14565. Financial points out that in this situation the rendition of judgment against the insured serves a dual purpose; that it not only creates a judgment debt in favor of the injured party, but at the same time it creates a debt under the insurance contract between the judgment debtor and his insurer; and that for this reason, the insurer should have a right to defend against the default judgment.

"Financial's remedy, however, is not to attempt to relitigate the facts of the original suit in the subsequent garnishment action, as this is merely an ancillary proceeding to subject the indebtedness to satisfaction of a judgment. Weir v. Galbraith, 92 Ariz. 279, 376 P.2d 396. If the insurance company can show statutory grounds to set aside the default, its remedy is to move to have the default judgment set aside, as was done in the instant case."

In making the omnibus clause a part of every motor vehicle policy, we pointed out that it was for the protection of the public. We must also see to it that equity is extended to the insurer. In interpreting the rules governing the setting aside of defaults on a motion of the insurer, we held in Sandoval that equity did not require the setting aside of the default because the insurer waited nine weeks to make the motion after being informed of the default judgment, and for this reason was not within a reasonable time.

In Coconino Pulp and Paper Company v. Marvin, 83 Ariz. 117, 317 P.2d 550, we stated:

"In determining whether a defendant should be relieved of a default judgment the court must be guided by equitable principles. These principles require that a defendant be given a fair opportunity to litigate a disputed obligation and also require that a plaintiff, who has, according to regular and legal proceedings, secured a judgment be protected against a violation of the rule which requires the sanctity and security of a valid judgment. When the circumstances are such that it would be extremely unjust to enforce such a judgment, relief will be granted to the extent of allowing defendant a fair opportunity to present the matter on its merits. In recognition of

these principles Rule 60(c), Rules of Civil Procedure, 16 A.R.S., provides that when a judgment is taken against one by reason of his mistake, inadvertence, surprise or excusable neglect, relief may be granted therefrom upon such terms as are just. If a judgment is acquired because of a party's mere neglect, inadvertence or forgetfulness without any reasonable excuse therefor, the judgment will not be disturbed and the neglecting party must suffer the consequences. The general test of what is excusable is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances. Elms v. Elms, 72 Cal.App.2d 508, 164 P.2d 936.

\* \* \* \* \* \*

"Generally the ruling of the trial court on a motion of this character will not be disturbed, for the reason that it is a matter within the discretion of the trial court when there is a basis for such discretion, but if the undisputed facts and circumstances as shown in this case require a contrary ruling as a matter of law this court will reverse. Lynch v. Arizona Enterprise Mining Co., 20 Ariz. 250, 179 P. 956; Bowman v. Hall, 83 Ariz. 56, 316 P.2d 484."

The simultaneous attainment of these desiderata is obviously impossible. "Laudable as is the goal of remedying injustice, Rule 60(b) requires the courts to strike a balance between that goal and the desire to achieve finality in litigation." 3 Barron and Holtzoff Federal Practice and Procedure 396.

Rule 55(c), Fed.Rules of Civ.Proc., 28 U.S.C.A., provides:

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with rule 60(b)."

Federal Rule 60(b) reads, in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment \* \* \* for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect \* \* \* or (6) any other reason justifying relief \* \* \*."

These rules must be read in the light of our holdings, in Hendrie Buick Company v. Mack, 88 Ariz. 248, 355 P.2d 892, that "\* \* \* in order for a default to be set aside, the party in default must show (1) that his failure to answer within the time required by law was excusable neglect, and (2) that he had a meritorious defense."

■ In other words, in order to uphold the sanctity of judgments, we require one seeking to open a default judgment to present a good excuse for having failed to appear and defend. At the same time, even though he may show a good excuse for not appearing, we refuse to permit him to open the judgment, unless he also shows that he has a good defense.

Another applicable rule is that the motion must be filed promptly. Sandoval, supra. In applying these rules, one must also keep in mind two other principles: First, the facts must be examined in the strongest light possible in favor of the party prevailing in the trial court, Thomas v. Goettl Bros. Metal Products, 76 Ariz. 54, 258 P.2d 816, and, second, where the circumstances lead the court to hesitate upon the motion to open the default, the doubt should be resolved in favor of the motion. In Gray v. Dillon, 97 Ariz. 16, 396 P.2d 251, the Court said:

"It is well settled that the granting of motions under Rule 55(c) on the ground of excusable neglect is within the sound discretion of the trial court. Schering Corporation v. Cotlow, 94 Ariz. 365, 385 P.2d 234 [17 A.L.R.3d 617]; Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208; Overson v. Martin, 90 Ariz. 9, 363 P.2d 604; Coconino Pulp and Paper Company v. Marvin, 83 Ariz. 117, 317 P.2d 550; Thomas v. Goettl Bros. Metal Products, Inc., 76 Ariz. 54, 258 P.2d 816; Marsh v. Riskas, 73 Ariz. 7, 236 P.2d 746; Lynch

v. Arizona Enterprise Mining Co., 20 Ariz. 250, 179 P. 956; Dowdy v. Calvi, 14 Ariz. 148, 125 P. 873.

"In Doudy we quoted with approval from Watson v. San Francisco & H. B. R. R. Co., 41 Cal. 17, 20, where the court said:

" ' "The exercise of the discretion ought to tend, in a reasonable degree at least, to bring about a judgment on the very merits of the case; and when the Circumstances are such as to lead the court to hesitate upon the motion to open the default, it is better as a general rule that the doubt should be resolved in favor of the application." ' 14 Ariz. 148, 159, 125 P. 873, 878.

"The standard to be applied in judging the defaulting defendant's conduct is whether his conduct might be the act of a reasonably prudent person under the same circumstances. * * *"

In Patapoff v. Vollstedt's Inc., 267 F.2d 863 (9th Cir.), the Court said:

"Rule 60(b) is clearly designed to permit a desirable legal objective: that cases may be decided on their merits. 'The recent cases applying Rule 60(b) have uniformly held that it must be given a liberal construction. * * * Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments.' * * *"

As pointed out by this Court, after the motion in Sandoval, supra, to set aside the judgment, Rule 60(c) was amended to include "any other reason justifying relief from the operation of the judgment." Both the rules and the decision of this Court require the consideration of equity in the determination of a motion to set aside a default. This amendment permits an even more liberal holding in a case where an insurance company—through no fault of its own—has not had the opportunity of defending a suit on its merits. As we pointed out in Sandoval, supra, the motion to set aside a default must be made within a reasonable time. This was done in the instant case.

It is also contended that the rule announced in Jenkins v. Mayflower Insurance Exchange, supra, as interpreted by Sandoval v. Chenoweth, supra, eliminates the policy-defense that the insured failed to give prompt notice to the company that he has been served with a summons. In Sandoval, supra, we stated that the provisions of the Financial Responsibility Law (A.R.S. § 28–1101 et seq.) are a part of every automobile liability policy, whether or not such policy is "certified". It is clear that Sandoval, supra, extended the principle of Mayflower, supra, to the policy violation of failure to give prompt notice of suit to one's insurance carrier. This is consistent with our holdings that lack of notice to an insurance company will not be a valid defense unless such lack prejudiced the company in some way. Lindus v. Northern Insurance Company of New York, 103 Ariz. 160, 438 P.2d 311.

In Coconino Pulp and Paper Co. v. Marvin, supra, we held that the failure of a secretary in a large law firm to notify the attorney—in accordance with the firm's established practice to furnish the calendar for the purpose of reminding attorneys of the time to prepare and file pleadings—was sufficient grounds to set aside a default judgment against the client.

In the instant case, the various conversations among the parties, prior to service of process, could very well have caused confusion, on the part of defendants, as to the necessity of notification to Farmers. And, on the other hand, the inactivity of Farmers could have been a reasonable reaction to the presence of personal counsel for defendants. The party who is bound to pay the judgment here is Farmers, In fact, if not in law, it stands in the place of defendants, Ash v. Farwell, D.C., 37 F.R.D. 553, 555, and the same equitable considerations as apply to a defaulting defendant also apply to the insurer. Skolsky v. Magna Distribution Corporation, 254 Cal.App.2d 246, 62 Cal.Rptr. 91. The rule as to vacating

defaults should be liberally construed as to Farmers under the facts here presented.

 Defendants' personal attorney, David Pakula, had notified plaintiff's attorney that defendant had received a letter, and that defendant Gardner was not at fault in the accident. The plaintiff's attorney did not inform defendants' attorney that a lawsuit had been filed, or that service had been perfected until after the default judgment had been entered. The plaintiff's attorney was under no legal duty to inform the defendants' attorney that his client had been sued; on the other hand—particularly where insurance is involved—an attorney might better serve his client by an inquiry about insurance and if it were found that defendant had insurance notify the company. Long litigation could frequently be avoided by so doing.

As to the presentation of a meritorious defense, defendant, by affidavit, set forth that the other vehicle had run a stop sign; that he believed it was being operated without headlights; and that his own view was obstructed by a hedge which prevented him from seeing the other vehicle in time to avoid the collision. The allegation of running the stop sign is sufficient support for the claim of a meritorious defense, even without the weak allegation, on belief, that the other car was being operated without headlights.

 Matters such as these must be decided on a case-to-case basis. Under the circumstances here, we are of the opinion that equity requires that we hold the trial court did not abuse its discretion in setting aside the default, and that justice and fair play require that the insurer in behalf of the Gardners be given a chance to try the case on its merits. This is a close question. In such cases equity requires that we lean toward the new trial. Insurance companies for their protection might well make inquiry in regard to suits and request notice if filed when they have knowledge that one of their clients has had an accident. They too might thereby avoid the expense of litigation and frequently pay-

ment of a default judgment, for, as we stated in Sandoval, supra, they must be prompt. They must also be diligent.

Judgment of the Superior Court setting aside the default judgment is affirmed, and the decision of the Court of Appeals is vacated.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.