507 P.2d 687

David R. PHILLIPS and Virginia Phillips, husband and wife, David R. Phillips as father and statutory representative for the death of baby Shawna Jean Phillips, Deceased, Appellants,

v.

Francis F. FINDLAY and L. B. Bayba, Appellees.

No. 2 CA–CIV 1285.

Court of Appeals of Arizona, Division 2.

March 21, 1973.

349

Miller, Pitt & Feldman, P. C. by Barry N. Akin, Tucson, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Mahowald, and John H. Westover, Phoenix, for appellees.

HOWARD, Judge.

In this appeal the appellants claim that the trial court abused its discretion in granting the appellees' motion to set aside the entry of default and default judgment. (Appellants were plaintiffs and appellees were defendants below.)

The facts pertaining to the entry of default and default judgment, viewed in the light favorable to the trial court's decision are as follows.

On December 13, 1971, a complaint was filed by the plaintiffs in the Pinal County Superior Court alleging that they were injured by reason of the negligence of the following named defendants. Magma Copper Company, a corporation, Francis F. Findlay, Thomas J. Hicks, L. B. Bayba and Charles H. Nelson.

"Scanning" and "perusal" of the complaint indicates that Magma Copper Com-

pany was allegedly negligent in the operation of its hospital, and that it was liable for the negligence of the individually named medical doctors, including the defendants, under the doctrine of *respondeat superior*. The complaint also alleges that "the employees of . . . Magma Copper Company's Hospital were negligent", but nowhere states that any of the individually named physicians were employees of Magma Copper Company.

On December 16, 1971, copies of the summons and complaint were personally served upon Thomas J. Hicks, M.D. and L. B. Bayba, M.D. at the Magma Copper Hospital in San Manuel, Arizona. Francis F. Findlay, M.D., now deceased, was also served with process on December 16, 1971, at his home in San Manuel. Magma Copper Company was served with process on December 20, 1971.

At the time Dr. Bayba was served, he introduced Dr. Hicks to the process server who, in the presence of Dr. Bayba, served Dr. Hicks. Dr. Bayba testified by way of affidavit that Dr. Hicks advised him that he would take care of everything and that Dr. Bayba need not take any further action with respect to the summons and complaint.

Mrs. Ruth E. Findlay testified by way of affidavit that she was the wife of Dr. Findlay; that she was present when the summons and complaint were served upon her husband; and that because her husband was seriously ill, she notified Dr. Hicks that service of process had been made on December 16, 1971. Mrs. Findlay was assured by Dr. Hicks that he would take the necessary action to see that the summons and complaint were handled. Mrs. Findlay contacted Dr. Hicks again prior to departing for Denver, Colorado on December 22, 1971, and was reassured that he had taken care of everything and that there was nothing to worry about.

Both Dr. Bayba and Mrs. Findlay relied upon what they were told by Dr. Hicks, and neither took any further action with respect to the summons and complaint.

Dr. Hicks testified by way of affidavit that he was the medical director of the Magma Copper Company Hospital; that he assured Dr. Bayba that he would take care of notifying the appropriate person(s) necessary to defend the lawsuit; and assured Dr. Bayba that no further action on his part was necessary. After being contacted by Mrs. Findlay on or about December 16th or 17th, 1971, he assured her that everything had been taken care of; that he had already talked to Mr. Durkee; that appropriate arrangements had been made for handling the lawsuit; and that no further action was necessary on the part of either Dr. Findlay or herself. Dr. Hicks had occasion to reassure Mrs. Findlay two or three times subsequent thereto that all appropriate measures had been taken.

Dr. Hicks contacted Mr. Durkee on or about December 17, 1971, and advised him that he, Dr. Bayba and Dr. Findlay had been served. However, as of December 17, 1971, the only copies of the summons and complaint in the possession of Dr. Hicks were those actually served upon him. Dr. Hicks believed that it was sufficient that one copy of the summons and complaint be forwarded to Mr. Durkee and the insurance company, and for this reason he advised the defendants Bayba and Findlay that it was not necessary for them to take any action.

John E. Durkee testified by way of affidavit and deposition that he was the controller for Magma Copper Company and that he was advised by Dr. T. J. Hicks on or about December 17, 1971, that Dr. Hicks had been served with a summons and complaint on December 16, 1971, and that he might have been advised by Dr. Hicks that the defendants Bayba and Findlay had also been served. On December 17, 1971, Dr. Hicks delivered his summons and complaint to Mr. Durkee who, at that time and in the presence of Dr. Hicks, attempted to place a telephone call to the offices of Marsh & McLennan, Inc., agents for the insurance carrier in Los Angeles. Being unable to complete that telephone call to the appropriate persons, Mr. Durkee

sent a letter, dated December 17, 1971, and enclosed the summons and complaint served upon Dr. Hicks. Mr. Durkee assumed that it was sufficient to send Dr. Hicks' copies to the insurance company and that since these contained the names of the other defendants, no further information with respect to dates of service upon them was necessary. He further assumed that the insurance company would contact him if it needed additional information to defend the lawsuit. However, Mr. Durkee was absent from his office from December 22, 1971, through December 28, 1971, and, if there was an attempt to contact him during that period of time, he was unavailable.

Although Mr. Durkee was aware at the time he sent copies of Dr. Hicks' summons and complaint to Marsh & McLennan that said complaint alleged that Magma Copper Company was responsible for the acts of its employees, the defendants Bayba and Findlay, he made no attempt to contact said defendants and in the letter of transmittal to Marsh & McLennan stated that only Dr. Hicks had been served and that he anticipated that Magma Copper Company would probably be served in the future. Nothing was said about the relationship between Magma Copper Company and the defendants Bayba and Findlay or the fact that both defendants had been or would be served with process. Mr. Durkee further testified that if he had known that the defendants had been served and had received copies, he would have so informed Marsh & McLennan in a second letter.

When Marsh & McLennan received Durkee's letter along with Dr. Hicks' summons and complaint, they promptly forwarded them together with a form notice of the claim to the insurance carrier which received the documents on December 21, 1971. The notification form made no mention of the relationship between the defendants Bayba and Findlay and showed only that process was served upon Dr. T. J. Hicks.

George Isett and Violet Borton were employees of the insurance carrier. Mr. Isett was the Los Angeles claims manager; Mrs. Borton worked under Mrs. Isett's supervision as a secretary-clerk in the claims department. Mrs. Borton's job was to "process lawsuits", which involves scanning the lawsuits to determine the type and nature of the case and to then give them to the appropriate supervisor or send them to an office in the company that handled the particular type of lawsuit. Her job did not require reading complaints because there were too many lawsuits to process each day. Accordingly, she scanned. but did not read either the complaint or the allegation that Magma Copper Company was liable for the negligence of the individually named defendants under the doctrine of *respondeat superior*. It was not her responsibility to make a determination as to who was an insured, and she did not know that Dr. Hicks or the other defendants were insureds and had no knowledge of anyone being served other than Dr. Hicks, as stated in Marsh & McLennan's transmittal. Nor was it part of Mrs. Borton's job to determine which defendants named in a lawsuit had or had not been served. Further, Mrs. Borton had no knowledge of the relationship between Magma Copper Company and Dr. Hicks or any of the other individual defendants. She merely was required to determine which supervisor would handle the lawsuit, log it in a register, send it to the appropriate department, and obtain extensions of time to file an answer, when so instructed by her supervisor.

Mr. George Isett testified by way of deposition that he was the Los Angeles Branch Claims Manager for the insurance carrier and had the "overall responsibility for the supervision of claims that we handle and adjust in the administration of the department itself." He worked in the South Tower of the Chubb & Son Claims Office at 3200 Wilshire Boulevard in Los Angeles. The office employed about eight hundred and fifty (850) people, and forty (40) were under Mr. Isett's direct supervi-

sion. Mr. Isett usually dealt with supervising adjusters rather than field adjusters and was not involved in the daily processing of individual claims.

Mr. Isett first became aware of the case at bench on December 22, 1971, when Mrs. Borton called the suit papers to his attention and he examined them to ascertain the nature of the claim. The first problem was to determine whether or not it was a medical malpractice claim, because at that time the Los Angeles Claims Branch did not handle medical malpractice, even though claims against Magma Copper Company, a commercial casualty account, were usually directed to the Los Angeles Branch. During December, 1971, consideration was being given to sub-dividing the handling of medical malpractice claims, and Mr. Ed Painton, manager of the insurance carrier's malpractice unit, was to make the decision as to which cases, offices, and areas were going to handle medical malpractice claims. Also, Arizona general liability claims were handled by the insurance carrier's office in San Diego, and it was possible that Arizona medical malpractice claims would be sent to that office.

Mr. Isett determined that the complaint indicated a medical malpractice case, and he told Mrs. Borton that it should be handled by the medical malpractice unit in the North Tower at 3200 Wilshire Boulevard, 13th Floor. He instructed her to contact Ed Painton to see who should handle the claim. Mr. Isett's main interest at that time was the nature of the claim, since he was deciding whether his or another department was to handle it. Accordingly, Mr. Isett neither read the names on the summons and complaint nor attempted to determine whether the insurance carrier provided coverage for any of the individual defendants. Mr. Isett did not know whether Dr. Hicks was the agent served or whether he was a defendant and did not know the other named defendants or their relationship to Magma Copper Company. Further, he did not know which company insured Magma Copper Company or how long coverage was extended to Magma as his department of the claims office did not have a copy of the policy covering Magma Copper Company.

After Mr. Isett had determined that the case was a medical malpractice claim and before it was sent to Mr. Painton in the North Tower (whose responsibility it was to determine whether anyone else had been served and to do what was necessary), Mr. Isett's next concern was the time to appear and answer for whoever was insured. He instructed Mrs. Borton to contact plaintiffs' counsel and request a thirty (30) day extension because of the forthcoming holidays and because "we are a little short on time, and we have got to determine exactly who is going to handle this thing, and San Diego may be involved."

On December 22, 1971, Mrs. Borton called the offices of Miller, Pitt & Feldman, P.C. and asked to speak with R. L. McAnally. She was informed that Mr. McAnally was unavailable. Mrs. Borton informed Mr. McAnally's secretary that she was a representative of the insurance carrier for Magma Copper Company and requested a thirty (30) day extension for Magma Copper Company and Dr. Hicks because the insurance carrier's offices were to be closed for approximately four days over Christmas and four days over New Year's. At no time during this conversation was Mrs. Borton informed that the defendants other than Dr. Hicks and Magma Copper Company had been served. Likewise, she was not informed that those defendants were employed by Magma Copper Company. The purpose of Mrs. Borton's telephone call was to request an extension of time to answer on behalf of the insurance carrier's insureds. If she had known that the defendants Bayba and Findlay had also been served, and if their names had been included on the transmittal from Marsh & McLennan, Inc., she would have also requested an extension of time to appear and answer for the defendants Bayba and Findlay, as this was part of her job. There was no further discussion

whatsoever concerning the lawsuit or the defendants other than Dr. T. J. Hicks and Magma Copper Company. The request for an extension was granted and Mrs. Borton confirmed said extension by preparing a letter for the signature of plaintiffs' counsel.

In addition, on December 22, 1971, Mrs. Borton wrote a memo to Mr. Ed Painton informing him that suit had been filed and that an extension of time to answer had been obtained. Apparently at this time, the documents obtained from Marsh & McLennan, Inc. were then forwarded from Mr. Isett's department to Mr. Painton's medical malpractice unit. Mr. Painton then sent the summons and complaint, along with the other documents, to Mr. Lochead, the claims manager for the San Diego office which handled Arizona claims. The latter transmittal took place sometime between December 23, 1971, and January 4, 1972, during the holiday season.

On January 4, 1972, Mr. Lochead referred the file to Mr. John Westover of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, and requested the law firm to appear on behalf of the Magma Copper Company.

On January 5, 1972, Mr. Westover addressed a letter to plaintiffs' counsel indicating that the case had been referred to his law firm for defense and that "an extension of time had been granted to February 1, 1972" to which Mr. Akin, plaintiffs' counsel, subsequently responded: "The defendants may have been defaulted."

On January 6, 1972, an affidavit on default was filed and default was entered against defendants Bayba and Findlay. On January 10, 1972, a hearing was held in superior court at which time the plaintiffs presented evidence as to the damages sustained as a result of the malpractice of the defendants. At the conclusion of the hearing, damages were fixed by the court and judgment was entered in favor of the plaintiffs and against defendants Bayba and Findlay.

On January 13, 1972, the defendants filed a motion to set aside the entry of default and default judgment. On April 10, 1972, the motion was granted and defendants Findlay and Bayba were allowed fifteen days within which to file appropriate pleadings. Plaintiffs claim that the trial court erred in granting the motion.

Rule 60(c), as amended, Ariz.R.Civ.P., 16 A.R.S., provides that the court may relieve a party from a final judgment because of mistake, inadvertence, surprise, excusable neglect, or for any other reason justifying relief from the operation of the judgment. There is no question in this case that the defendants' motion was made within a reasonable time. There is further no issue as to whether they presented a meritorious defense to the trial court. Plaintiffs also admit that Findlay and Bayba were not negligent in their handling of the summons and complaints which were served upon them. Rather, they maintain that under the holding of Camacho v. Gardner, 104 Ariz. 555, 456 P.2d 925 (1969), and Smith v. Monroe, 15 Ariz.App. 366, 488 P.2d 1003 (1971), it was incumbent upon the insurance carrier to bring itself within the provisions of Rule 60(c), as amended, Ariz.R.Civ.P., 16 A.R.S. in order to justify the trial court in setting aside the entry of default and default judgment. They argue that such showing was not made.

On the other hand, the insurer contends that under Camacho v. Gardner, supra, it steps into the shoes of its insured, and if its insured is not negligent, neither is it. It also contends that in any event, a showing of excusable neglect was made.

■ A party seeking relief from a default judgment must demonstrate to the satisfaction of the trial court (1) that his failure to answer within a time required by law was excusable neglect; (2) that he had a meritorious defense; and (3) that he made prompt application for relief. Smith v. Monroe, supra. As noted above, plaintiffs concede that a meritorious defense was presented and that prompt appli-

**354**

cation for relief was made. The only issue to be decided was that of excusable neglect.

 The granting of motions under Rule 55(c), Ariz.R.Civ.P., 16 A.R.S., on the ground of excusable neglect is within the sound discretion of the trial court. Gray v. Dillon, 97 Ariz. 16, 396 P.2d 251 (1964). The facts must be examined in the strongest light possible in favor of the party prevailing in the trial court, Thomas v. Goettl Bros. Metal Products, 76 Ariz. 54, 258 P.2d 816 (1953). Where the circumstances lead the court to hesitate upon a motion to vacate the default, the doubt should be resolved in favor of the motion. Camacho v. Gardner, supra. The exercise of discretion ought to tend, in the reasonable degree at least, to bring about a judgment on the merits of the case. Dowdy v. Calvi, 14 Ariz. 148, 125 P. 873 (1912). The standard to be applied in judging a defendant's conduct is whether it might be the act of a reasonably prudent person under the same circumstances. Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 (1963).

 It is apparent that the mixup in this case began when Mr. Durkee, the controller for Magma Copper Company, failed to forward to Marsh & McLennan, Inc., the copies of the summons and complaints which were served on the defendants Bayba and Findlay. We do not think that it was unreasonable for Marsh & McLennan, Inc. to assume that those defendants had not yet been served and therefore fail to mention them in the letter of transmittal of the file to the insurance carrier. This error was apparently compounded by each person who handled the file, since they relied on the notice of claim sent by Marsh & McLennan, Inc. The record indicates that the insurer, rather than being dilatory, was attempting to be diligent when its employee called plaintiffs' attorney and requested an extension of time for filing an answer. Mrs. Borton made it quite clear that had she known that Bayba and Findlay had been served and had their names

been included on the transmittal from Marsh & McLennan, she also would have requested an extension of time to appear and answer on their behalf. The standard to be applied is that of the "reasonably prudent person under the circumstances." It is not that of the super-cautious individual, but only the reasonably prudent one. We cannot gainsay the trial court's determination that the insurer, acting through its agents and employees, met the required standard.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.