595 P.2d 159

Franklin R. DeHONEY and Virginia R. DeHoney, husband and wife, and Donald Malquist and Mary Jo Malquist, husband and wife, doing business as the Showcase, a Co-Partnership, Appellants,

v.

Serapio HERNANDEZ, David Wayne Hovis, Gerald Lee Edwards, James Hill, and the City of Casa Grande, a Body Politic, John Doe, One through Five (1–5), and XYZ Corporation, One through Five (1–5), Appellees.

No. 14124–PR.

Supreme Court of Arizona, In Banc.

April 20, 1979.

Rehearing Denied May 22, 1979.

368

StanfieldStanfield, McCarville, Coxon, Cole & Fitzgibbons, by A. Thomas Cole, Casa Grande, for appellants.

Murphy & Hazlett, by Thomas M. Murphy, Scott Goering, Tucson, for appellees.

Michael W. Huddleston, Phoenix, amicus curiae for Legal Advisors' Association of Arizona in support of appellees.

J. LaMar Shelley, Mesa, amicus curiae for The League of Arizona Cities and Towns in support of appellees.

CAMERON, Chief Justice.

This is a petition for review of a decision and opinion of the Court of Appeals, Division Two, 122 Ariz. 314, 594 P.2d 1010. We

have jurisdiction pursuant to Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S.

We granted the petition for review to consider the following two questions:

1. Did the trial court abuse its discretion in setting aside plaintiffs' entry of default as to the four named police officer defendants?
2. Did the trial court err in finding that defendants owed no special duty to plaintiffs and therefore in granting defendants' motion for a directed verdict?

The facts viewed in the light most favorable to the parties opposing the motion for a directed verdict, *Jackson v. H. H. Robertson Co., Inc.*, 118 Ariz. 29, 574 P.2d 822 (1978), are as follows. Plaintiffs Franklin and Virginia DeHoney owned a jewelry and framing store in Casa Grande, Arizona, called the Showcase. During a large Indian jewelry sale in October, 1974, the DeHoneys employed two uniformed, off-duty Casa Grande police officers to guard the jewelry. During the sale Mr. DeHoney had several casual conversations with the officers regarding security systems because the DeHoneys planned to expand their inventory following the sale. Both officers recommended a silent alarm system. A third officer, who occasionally entered the store, had similar conversations with DeHoney. After the sale, a fourth Casa Grande patrolman entered the Showcase specifically to discuss the relative advantages of various security systems. He too suggested installation of a silent alarm system. Finally, DeHoney visited the police station where he spoke with Lt. Bain, who basically confirmed what the other officers had stated with respect to silent alarm systems.

All of the police officers with whom DeHoney had discussed silent alarm systems described the same general response procedure. In Casa Grande, silent alarms are installed in such a manner that the alarm is activated only at the police station. Once the alarm is triggered the dispatcher directs policemen to the building indicated. They secure the front and rear entrance so an intruder cannot escape and then remain there until the owner, who is notified by the dispatcher, arrives. The officers estimated an initial response time of 30 seconds to 2½ minutes for the Showcase. They also informed DeHoney that a silent alarm, as opposed to an audible system, enhanced the likelihood of apprehending an intruder since the police are alerted to his precise location and the intruder is unaware that he has been detected. DeHoney testified that he had not considered burglar alarm systems prior to his conversations with the police, as he had been unaware of their feasibility for small businesses.

In January, 1975, the DeHoneys installed a silent burglar alarm system at the Showcase. It would be activated if the doors or windows were tampered with or if any object interrupted one of the several infrared beams that criss-crossed the interior of the store.

On 30 June 1975, the silent alarm for the Showcase was activated at the police station at 2:11 a. m. The dispatcher, defendant Edwards, immediately radioed the officers in the field. At 2:13 a. m. defendants Sgt. Hernandez and Officer Hill simultaneously arrived in front of the Showcase and defendant Officer Hovis arrived at the rear. The front and back doors were secure; the police saw no indications of disturbance. Sgt. Hernandez then instructed Edwards to telephone DeHoney and also directed Officer Hovis to remain in the general vicinity. Officers Hill and Hernandez left the area for other duties.

Edwards was delayed in telephoning DeHoney because he had other duties and also had difficulty in locating the telephone number. DeHoney was not reached until 30 minutes later at 2:45 a. m. He proceeded to the store quickly and entered it with Officer Hovis. A large quantity of jewelry had been stolen. Holes in the ceiling and debris on the floor below were clearly visible.

At trial, Tony Leon, the burglar, testified that he had entered the store through an air vent on the roof, broke through the ceiling, and jumped down to the floor. Within a few minutes, he heard the police

at the front door. He dropped to the floor behind the counter and watched them inspect the door and talk for a few minutes before they departed. Thinking it had been just a routine door check, Leon filled a box with jewelry, broke the padlock on the back door and left.

At the time the alleged cause of action arose, the DeHoneys were in the process of finalizing a partnership agreement with plaintiffs Donald and Mary Jo Malquist, who had contributed nearly half of the stock of jewelry and also shared equally in the profits. The DeHoneys and Malquists brought this suit against the policemen who responded to the alarm, the dispatcher, and their employer, the City of Casa Grande, on the theory that their negligence had led to plaintiffs' losses.

Default was entered against the four individual police officers, but the trial court granted the officers' motion to set the entry of default aside. The court then granted defendants' motion for a directed verdict after the plaintiffs had presented their case.

The Court of Appeals reversed and remanded for a new trial. The plaintiffs petitioned for rehearing because the decision of the Court of Appeals affirmed the order of the trial court setting aside the entry of default against the four police officers. Defendants petitioned for rehearing because the Court of Appeals held that the trial court erred in granting defendants' motion for directed verdict. From the denials of the motions for rehearing, both plaintiffs and defendants petitioned this court for review, which we granted.

## SETTING ASIDE THE ENTRY OF DEFAULT

Plaintiffs initially contend that the trial court abused its discretion in setting aside their entry of default against the four police officer defendants.

On 22 September 1975, plaintiffs filed their original complaint which named as defendants the City of Casa Grande and fictitious police officers and corporations. On 1 October 1975, Sgt. Hernandez and Officers Hovis and Edwards signed affidavits acknowledging receipt of the summons and complaint and further acknowledging that the city attorney had accepted service on their behalf. Officer Hill signed an identical affidavit on 2 October 1975. The acceptance of service signed by the City Attorney on 30 September 1975 states:

"[T]he undersigned does hereby accept service of Summons and Complaint for said defendants, City of Casa Grande, Members of the City Council, and the City's Police Department * * *."

On 9 October 1975, the City of Casa Grande filed its answer, which stated in part:

"As Defendant is unaware of the true identities of Defendants, Officer John Roe and Officer Richard Doe, therefore it cannot respond to any allegation concerning these individuals.

\* \* \* \* \* \*

"This answer shall be deemed adopted by any fictitious defendants who are subsequently served by process and who were in fact employees or agents of the answering defendant, THE CITY OF CASA GRANDE, on or about the 30th day of July, 1975."

Plaintiffs did not amend their complaint to reflect the true names of the defendant police officers until 14 October 1977, more than two years later. On the same day plaintiffs filed an affidavit of default and default was entered against the four police officers. At the hearing the plaintiffs' attorney contended that the policemen had been served but had never filed an answer. He argued that because the term "defendants" in the acceptance of service signed by the city attorney is followed by a comma rather than a colon, "defendants" refers specifically to the four policemen. Moreover, plaintiffs' attorney pointed out that the answer filed by the city attorney was only on behalf of the city and any fictitious defendants subsequently served, whereas the individual police officers had been previously served.

The trial court found that the police officers had been timely served and that the

answer filed by the city attorney was adequate on behalf of all the defendants, and therefore the default was set aside. The Court of Appeals affirmed.

■ Setting aside an entry of default is a matter within the sound discretion of the trial court. *Gray v. Dillon*, 97 Ariz. 16, 396 P.2d 251 (1964). Rule 55(c), Rules of Civil Procedure, 16 A.R.S., states:

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(c)."

If the trial court was correct in finding that a timely answer had been filed on behalf of the four officers, then the defendants had not "failed to plead or otherwise defend" as required for an entry of default by Rule 55(a) of the Rules of Civil Procedure. The trial court then properly set aside the default because it was improperly entered in the first place.

■ However, even if we were to assume that the trial court erred in finding that the officers had answered, we still believe the default was properly set aside. The "good cause" requirement of Rule 55(c) coincides with the standard governing the propriety of setting aside a default judgment under Rule 60(c). *Overson v. Martin*, 90 Ariz. 9, 363 P.2d 604 (1961). A party seeking relief from either a default judgment or an entry of default "must demonstrate to the satisfaction of the trial court (1) that his failure to answer within a time required by law was excusable neglect; (2) that he had a meritorious defense; and (3) that he made prompt application for relief. [citation omitted]." *Phillips v. Findlay*, 19 Ariz.App. 348, 353, 507 P.2d 687, 692 (1973). Plaintiffs concede that a meritorious defense was presented and that prompt application for relief was made, but contend that excusable neglect has not been demonstrated. We do not agree that excusable neglect has not been shown.

■ During the two year period between the filing of the answer until immediately prior to the entry of default, it was reason-able for the officers to believe that the attorneys for the city had answered on their behalf. In fact, during that time it would appear that all of the parties assumed that the city had answered for the officers and that the attorneys for the city were actively representing the officers. When this misconception was questioned by the entry of default, timely motion was made to set aside the default.

Our Court of Appeals has stated:

"It is well settled in this state that on a motion to vacate a default, any doubt should be resolved in favor of the movant, i. e., judicial discretion should be guided by the policy of favoring resolution of controversies on the merits. [citation omitted]" *Davis v. Superior Court for Pima County*, 25 Ariz.App. 402, 403, 544 P.2d 226, 227 (1976).

We believe that the officers could rely upon the belief, shared by the attorneys involved, that they had indeed answered and any failure or neglect to do so was excusable. We find no abuse of discretion in the setting aside of the entry of default.

## THE DIRECTED VERDICT

Plaintiffs contended on appeal that the trial court erred in finding that defendants owed no special duty to plaintiffs, and therefore erred in granting defendants' motion for a directed verdict. The Court of Appeals agreed, holding that if plaintiffs' factual allegations could be established at a new trial, the defendants would be liable for plaintiffs' losses.

■ The doctrine of governmental tort immunity was abolished in Arizona in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963). However, the issue of immunity and the issue of liability are two separate and distinct issues. By removing the defense of sovereign immunity we did not create a cause of action where none previously existed. In order to establish the liability of governmental entities or their agents in an action based on negligence, it is still necessary to demonstrate: (1) that the defendant owed a duty to the

plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by such breach. *Morris v. Ortiz*, 103 Ariz. 119, 437 P.2d 652 (1968).

In *Massengill v. Yuma County*, this court examined the duty of public agencies and officers and found:

"The general rule pertaining to governmental agencies and public officers is that ' . . . if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.' [citations omitted]" 104 Ariz. 518, 521, 456 P.2d 376, 379 (1969).

We held in *Massengill* that the duty to provide police protection is one ordinarily owed to the general public, not to individual members thereof. See also *Ivicevic v. City of Glendale*, 26 Ariz.App. 460, 549 P.2d 240 (1976) and *McGeorge v. City of Phoenix*, 117 Ariz. 272, 572 P.2d 100 (1977). Other courts as well have recognized the general rule that no civil liability arises from the failure to supply adequate police protection. E. g., *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972); *Henderson v. City of St. Petersburg*, 247 So.2d 23 (Fla.App.1971); *Huey v. Town of Cicero*, 41 Ill.2d 361, 243 N.E.2d 214 (1968); *Riss v. City of New York*, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968); *Walters v. Hampton*, 14 Wash. App. 548, 543 P.2d 648 (1975).

*Massengill v. Yuma County*, supra, like the instant case, involved a claim that a governmental agency had negligently failed to provide adequate police protection. We affirmed there the dismissal of a complaint alleging that an automobile collision in which plaintiffs' decedents were killed resulted from a deputy sheriff's failure to apprehend and arrest intoxicated motorists observed driving in a reckless manner immediately prior to the accident. We also indicated in *Massengill* that instances where a public duty is narrowed to a private or special duty will not be found lightly, as otherwise a "staggering" potential govern-

mental liability could result. 104 Ariz. at 523, 456 P.2d at 381. We did acknowledge in *Massengill*, however, that there are situations where governmental entities, or their agents, can, by their conduct, narrow a duty owed to the public into a special duty owed to an individual, for the breach of which they could be liable in damages. Our Court of Appeals has stated:

"In the narrow field of police protection, however, we can discern certain general situations where duty toward specific individuals can be found. One is where there has been a specific promise or representation by police to a person in a situation which creates justifiable reliance. * * * Another general situation is where a police officer affirmatively causes damage to an individual." *McGeorge v. City of Phoenix*, 117 Ariz. 272, 277, 572 P.2d 100, 105 (1977).

■ It is not contended in the instant case that the police affirmatively damaged the plaintiffs, and we find no specific promise or representation to the plaintiffs upon which plaintiffs could justifiably rely. The officers had recommended installation of a silent alarm system and had described the general police procedure in response to silent alarm alerts to DeHoney. The only alleged negligence was the delay in notifying plaintiffs and the failure to remain at the building until the owner arrived. But there was no specific promise or representation that the owner would always be immediately notified, or that the officers would remain on the premises pending the owner's arrival in every instance, despite conflicting demands on scarce police resources. Certainly there are many situations where emergencies confronting the police in the discharge of their duties to the public generally would make it impossible to immediately notify the owner and await his arrival. There was, then, no narrowing of the general public duty to a special duty to prevent harm to plaintiffs' property.

Plaintiffs, however, point to *Grimm v. Arizona Board of Pardons & Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977) in support of their position that the public duty was nar-

rowed to a special duty. We held there that members of the Board of Pardons and Paroles owed a duty to individual members of the general public to the extent of avoiding grossly negligent or reckless release of a highly dangerous prisoner. Our recognition of a privately enforcible duty in *Grimm* was predicated specifically upon Restatement (Second) of Torts § 319, which states:

"Duty of Those in Charge of Person Having Dangerous Propensities

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

In the instant case, no claim is made that the defendants assumed control over a person having dangerous tendencies. *Grimm* is distinguishable on the facts and not applicable here.

Plaintiffs also cite decisions from other jurisdictions establishing an exception to the general rule that neither a municipality nor its employees is liable for the failure to supply adequate police protection. Principal reliance is placed on the New York Court of Appeals decision in *Schuster v. City of New York*, 5 N.Y.2d 75, 180 N.Y. S.2d 265, 154 N.E.2d 534 (1958) which we quoted from with approval in *Massengill*. In *Schuster*, the plaintiff's decedent, in response to official police circulars, provided information leading to the arrest of a notorious criminal. The police then revealed to the press the informant's role in the arrest, which became widely publicized, and when the informant received threats on his life he requested police protection. Partial police protection was extended briefly, but withdrawn, and thereafter the informant was murdered. Holding that the complaint did state a cause of action, the New York Court of Appeals, with two concurring opinions based on different theories, concluded that the city owed a special duty to use reasonable care for the protection of the informant. Whether we view *Schuster* as standing for the proposition that the public duty to aid the police creates a reciprocal duty to extend adequate police protection to informants, once it reasonably appears that they are in danger due to their collaboration, or for the principle that a special duty to provide police protection arises whenever police conduct increases the risk of harm to any individual, non-informers and informers alike, it does not support plaintiffs' position.

We agree with the California court in a case involving an action by a jewelry store against a city to recover damages sustained in a robbery wherein the police dispatcher had delayed 10 minutes, after receiving the alert message from the store's silent alarm, before relaying the message to units in the field. The court stated:

" * * * An alert from an alarm, irrespective of how transmitted, is no more than a complaint that a crime has been or is being committed. It is entitled to the same attention as any crime committed or in the process of commission, telephonically or otherwise reported by a bystander. Siam's [plaintiff's] suggestion that when police accept the alarm method of receiving information a special relationship is consummated implicitly argues that the police department has guaranteed the safety and security of the persons and property of all those who have made such arrangements. Thus, a police department, contrary to the established public policy of the state has assumed for the governmental entity an obligation which equates to a contractual guarantee of the consequences arising from the commission of a crime.

"It is one thing to wash out sovereign immunity for negligent acts or omissions, ministerial or discretionary, because of a special relationship embraced within the cited cases, but it is quite another to contend that the limited scope of the cited cases permit a policeman or the chief of the department to substitute by way of contract express or implicit a rule which equates with strict tort liability. [citation omitted]" *Antique Arts Corporation v. City of Torrance*, 39 Cal.App.3d 588, 592, 114 Cal.Rptr. 332, 334–35 (1974).

The decision of the trial court is affirmed. The decision of the Court of Appeals is reversed and the opinion of the Court of Appeals is vacated.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.