625 P.2d 907

Joyce KOVEN, Plaintiff-Appellant,

v.

SABERDYNE SYSTEMS, INC., an Arizona Corporation, Defendant-Appellee.

No. 1 CA–CIV 4191.

Court of Appeals of Arizona,
Division 1,
Department A.

March 27, 1980.

Rehearing Denied Feb. 20, 1981.

Review Denied March 24, 1981.

Michael H. Lynn, Ltd. by Gary S. Engle, Michael H. Lynn, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Richard J. Woods, P. Michael Whipple, Phoenix, for defendant-appellee.

## OPINION

WREN, Judge.

This is an appeal from an order of the Maricopa County Superior Court setting aside a default and the judgment entered thereon on the basis of defective service of process. The facts necessary for the resolution of this case are as follows.

On June 6, 1965, appellant, Joyce Koven, age nine, suffered injuries while present at the Legend City Amusement Park in Phoenix, Arizona, a facility owned and operated by Legend City, Inc. In 1970, Legend City, Inc., an Arizona corporation, and Saberdyne Inc., a Nevada corporation, were merged into a new Arizona corporation bearing the name Saberdyne, Inc. The new corporation apparently succeeded to all the rights, debts and liabilities of the predecessor corporations. On September 15, 1971, Saberdyne, Inc., changed its name to Saberdyne Systems, Inc. (S.S.I.), the appellee herein.

On May 18, 1976, appellant filed a personal injury action against four named defendants: Legend City Amusements, Inc., Legend City, Inc., Saberdyne, Inc., and Continental Recreation, Inc., as well as other ficticiously named defendants.[1] To determine the proper parties for service of process, appellant examined appellee's records on file with the Arizona Corporation Commission (Commission). The Commission's most recent information on S.S.I. was reflected in an annual report, dated July 31, 1974, which listed the following persons as corporate officers: David S. Barrington, president; Morry W. Spitz, vice-president; Ralph Sikkema, secretary; and Tess H. Barrington, treasurer and assistant secretary. The Commission's records also disclosed that the corporate offices were located at 6710 E. Camelback Road, Suite 234, Scottsdale, Arizona. However, the record reflects that S.S.I. failed to maintain any corporate offices at the address listed or at any other address; and, further, that S.S.I. had failed to appoint a statutory agent for service of process.

As there was no statutory agent, counsel for appellant attempted, without success, to locate the Barringtons. He further ascertained that Ralph Sikkema's last known address was outside the State of Arizona. Consequently, service of process was made upon Morry W. Spitz, on March 8, 1977, in his purported capacity as vice-president of S.S.I. Spitz, however, had resigned and severed all connections with the company on April 30, 1975. It also appears that Spitz said nothing to the process server regarding his resignation.

In the latter part of April, 1977, counsel for appellant, Gary Engle, and the claims supervisor for the Insurance Company of North America (INA), James Faux, began discussions regarding possible settlement of the pending litigation. During the initial discussions Faux continually informed appellant's counsel that no records could be located regarding appellant's claim or even substantiating that INA was the insurance carrier for Legend City at the time of the accident. As a result, both sides agreed that no default would be taken pending INA's investigation of the matter.

In the latter part of May, 1977, Allen Blanchard, a claims adjuster for INA, informed appellant that the appropriate claims file had been located and that INA was in fact the carrier. Thereafter, on June 2 and 10, 1977, appellant's counsel submitted demand letters to INA in an attempt to reach a final settlement. The June 10th letter stated that if INA failed to respond by 5:00 p. m. on June 16, 1977 appellant would proceed with a default against Saberdyne, Inc. On June 23, 1977, having failed to receive a response to the demand letters, appellant caused a default to be entered.

On June 28, 1977, Faux telephoned Engle to make a counter-offer to appellant's prior demand. Faux claims that Engle told him that he would take the offer to his client and get back to him. Engle, on the other hand, claims that he informed Faux that the offer was totally inadequate. In any event, Faux did not ask for a further extension of time in which to settle, or inquire as to the status of any default proceedings, and Engle did not reveal that he had already entered a default against appellee. On July 27, 1977, Faux submitted a letter to Engle inquiring whether he (Engle) had passed along the counter-offer to the appellant. On August 17, 1977 a final written judgment was entered against S.S.I.[2] On the same date Engle notified Faux by letter that a default judgment had been taken and demanded payment in accordance therewith. The letter further indicated that if he (Engle) did not receive the full amount of the judgment by 5:00 p. m. on August 26, 1977, he would proceed directly against INA to garnish the funds due under the subject insurance policy. This letter, dated August 17, 1977, was apparently the

1. There is no dispute that the complaint was timely filed upon appellant's reaching the age of majority.

2. A default hearing was held on July 7, 1977, but it appears that INA was never given notice of that hearing.

first notice to INA that a default judgment had been taken.

On September 2, 1977, a motion to set aside the default and judgment was filed on behalf of S.S.I. by attorney Richard J. Woods who had been engaged by INA to represent S.S.I. in the matter. In its motion S.S.I. argued that the judgment was not only void for lack of proper service, but that it was the result of mistake, inadvertence or excusable neglect. On December 20, 1977, the trial court entered its formal written order setting aside the default and the judgment entered thereon as void for lack of proper service.

Appellant presents three primary issues on appeal:

1) Did INA have standing to institute proceedings to set aside the default and judgment?

2) Was valid service of process made upon S.S.I.?

3) Does the record reflect circumstances sufficient to justify the setting aside of the default on the grounds of mistake, inadvertence, or excusable neglect?

## STANDING

It is the position of appellant that INA had no right to represent S.S.I. in the matter since it had previously denied coverage, and, furthermore, lacked a sufficient independent interest to intervene. We do not agree.

■ The right of an *insurer* to move to set aside a default judgment against its insured, either on behalf of the insured or on its own behalf, is well recognized in Arizona. *Camacho v. Gardner*, 104 Ariz. 555, 456 P.2d 925 (1969); *Edler v. Edler*, 9 Ariz.App. 140, 449 P.2d 977 (1969); *Lawrence v. Burke*, 6 Ariz.App. 228, 431 P.2d 302 (1967); *East v. Hedges*, 125 Ariz. 188, 608 P.2d 327 (1 CA–CIV 4155, filed March 11, 1980).

■ In our opinion, INA has a definite and substantial interest in the outcome of this litigation. Its mere denial of coverage did not eliminate its potential liability, or

appellant's threatened garnishment action. Furthermore, since the motion was filed on behalf of appellee, S.S.I., appellant had no right to question INA's representation of that entity. *Lawrence v. Burke; Edler v. Edler.*

■ Appellant further contends that the issue of proper service of process is personal to S.S.I., and, therefore cannot be asserted by INA. Again we disagree. While the general rule is that questions regarding service of process are personal to the person upon whom service was made and cannot be urged by another, 62 Am. Jur.2d, Process § 158, in the instant case, the motion to set aside the default was filed on behalf of S.S.I. by its legal representative. Consequently, INA had a right to raise the issue of defective service of process.

## SERVICE OF PROCESS

■ Service was attempted pursuant to rule 4(d)(6), Arizona Rules of Civil Procedure, 16 A.R.S., which provides that:

Service shall be made as follows: ... Upon a domestic or foreign corporation, ... by delivering a copy of the summons and of the complaint to ... an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process....

Proper service of process is essential for the court to have jurisdiction over the defendant. *Schering Corporation v. Cotlow*, 94 Ariz. 365, 385 P.2d 234 (1963); *Air East, Inc. v. Wheatley*, 14 Ariz.App. 290, 482 P.2d 899 (1971). Consequently, a judgment would be void and subject to attack if the court that rendered it was without jurisdiction because of lack of proper service. *Marquez v. Rapid Harvest Co.*, 99 Ariz. 363, 409 P.2d 285 (1965).

Appellant contends that the service upon Spitz, in his purported capacity as vice-president of S.S.I., was binding upon S.S.I. Her argument is based upon the theory that service of process upon a person who has resigned his corporate office, but whose suc-

cessor has not been chosen,[3] is effective against the corporation, where the corporate articles (here Art. VII) provide that an officer shall hold office until his successor has been elected and qualified.[4]

■ The question presented is one of first impression in our jurisdiction, and while there are few decisions directly on point elsewhere, the general and better reasoned rule appears to be that:

> Provisions in statutes, charters, or bylaws that the officer or director shall serve for a prescribed term and until his successor is chosen do not preclude him from resigning ... nor except in some jurisdictions, do they operate to continue him in office, notwithstanding his resignation, until his successor is chosen. 19 C.J.S. Corporations § 736 at pg. 69.

*Also see Security Investors Realty Co. v. Superior Court*, 101 Cal.App. 450, 281 P. 709 (1929); *Western Pattern & Mfg. Co. v. American Metal Shoe Co.*, 175 Wis. 493, 185 N.W. 535 (1921); *Marine Forwarding & Shipping Co. v. Barone*, 154 So.2d 528 (La. 1963); 20 A.L.R. 264 (1922); 19 Am.Jur.2d, Corporations § 1115.

■ Therefore, Spitz's resignation was complete upon its receipt by the corporation,[5] even though the corporate articles provided that the office was to be held until a successor was elected and qualified. As a consequence, we hold that appellant cannot rely on Article VII to validate service upon S.S.I.

Appellant additionally argues that by virtue of her good faith reliance upon the corporation's last filed annual report, appellee should be estopped from denying Spitz's authority to accept service of process. This raises the initial question of whether service upon an ostensible agent is sufficient to confer personal jurisdiction over the principal under Rule 4(d)(6), Arizona Rules of Civil Procedure.

■ Rule 4(d)(6) provides that service shall be made upon an *officer, managing or general agent*, or any agent *authorized by appointment* or *by law* to receive service of process. A review of the authorities persuades us that the phrase *agent authorized by law to receive service of process* is sufficiently broad enough to permit service through an ostensible agent. *See Simms v. Mason's Stores, Inc.*, 18 N.C.App. 188, 196 S.E.2d 545 (1973), *vacated on other grounds*, 285 N.C. 145, 203 S.E.2d 769 (1974); *Finnegan Construction Company v. Robino-Ladd Company*, 354 A.2d 142 (Del.1976); 2 Moore's Federal Practice §§ 4.12, 4.22[1].

■ It is axiomatic that an agent has such authority as his principal, actually or ostensibly, confers upon him. "Ostensible authority", or "apparent authority", as it is more commonly known, may be defined as that authority which the principal knowingly or negligently holds his agent out as possessing, or permits him to assume, under such circumstances as to estop the principal from denying its existence. *O. S. Stapley Company v. Logan*, 6 Ariz.App. 269, 431 P.2d 910 (1967); *Lux Art Van Service, Inc. v. Pollard*, 344 F.2d 883 (9th Cir. 1965), *cert. denied*, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965); *Finnegan Construction Company v. Robino-Ladd Company*, 2A C.J.S. Agency § 157.

■ "Ostensible authority" can never be derived from the acts of the agent alone. *Finnegan Construction Company v. Robino-Ladd Company*, 2A C.J.S. Agency § 61. Instead, "when dealing with 'apparent authority' the emphasis shifts to the third party's reliance on the acts of the principal and agent as opposed to any express or implied grant by the principal." *Finnegan Construction Company v. Robino-Ladd Company*, 354 A.2d at 144.

■ Consequently, in order to establish "ostensible" authority, the record must re-

---

**3.** Appellant alleges and appellee does not deny that a successor to Spitz was never elected.

**4.** Article VII of the S.S.I. Articles of Incorporation provides:

> the executive officers shall be elected by the Board of Directors immediately after each annual meeting of stockholders, and shall hold office for one (1) year, *or until their successors are elected and qualify....* (emphasis supplied.)

**5.** See 19 Am.Jur.2d, Corporations § 1114; 19 C.J.S. Corporations § 736.

flect that the alleged principal not only represented another as his agent, but that the person who relied upon the manifestation was reasonably justified in doing so under the facts of the case. *O. S. Stapley Company v. Logan; Hudlow v. American Estate Life Insurance Co.*, 22 Ariz.App. 246, 526 P.2d 770 (1974); *Finnegan Construction Company v. Robino-Ladd Company*, 2A C.J.S. Agency § 61.

The application of this doctrine to corporate service of process was expressly recognized and approved in *Pasadena Medi-Center Associates v. Superior Court*, 9 Cal.3d 773, 108 Cal.Rptr. 828, 511 P.2d 1180 (1973), on an analogous set of facts. There plaintiff's counsel discovering that the corporation maintained no general office for the transaction of business and had not filed a list of officers and agents authorized to accept service as required by the Corporation Code, examined the corporation's file on record with the Commission of Corporations and thereafter made service on a person erroneously designated in the file as secretary-treasurer.

The Supreme Court of California refused to set aside the default, and noted that:

The provisions of this chapter [service upon corporations] should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint.[6]

108 Cal.Rptr. at 832, 511 P.2d at 1184.

■ Arizona corporate disclosure statutes, including A.R.S. § 10–125 which re-

quires domestic corporations to file an annual report, are designed, in part, to enable anyone seeking information concerning a corporation to obtain such information through public records. *State v. Betts*, 71 Ariz. 362, 227 P.2d 749 (1951). Consequently, when S.S.I. filed its 1974 annual report, which denominated Spitz as vice-president, it represented to the public that Spitz was authorized to receive service of process on its behalf. Since S.S.I. never filed a subsequent annual report or noticed the Commission of the material errors contained in the existing report, the 1974 report remained as appellee's last public manifestation concerning its corporate structure. Consequently, at the time service was made, Spitz was still represented as possessing the requisite authority to receive service of process.

The facts concerning justifiable reliance are equally clear. The most current Commission records were replete with material inaccuracies. Not only was there no statutory agent or known place of business for S.S.I.[7] but, Spitz was the only purported officer known and available for service. Again we make reference to *Pasadena Medi-Center Associates v. Superior Court*, where the court observed:

Defendants secondly argue that at the time of plaintiff counsel's examination of the corporation's application [for stock] it [the application] was three years old and that the possibility of the replacement of the listed officers precluded his reasonable reliance upon it. But no more recent document was available; he could not examine the corporate books to determine

---

6. While we are cognizant of the cases which have held that Rule 4(e), Arizona Rules of Civil Procedure, which pertains to *substituted service*, must be strictly construed, *Llamas v. Superior Court*, 13 Ariz.App. 100, 474 P.2d 459 (1970); *Miller v. Corning Glass Works*, 102 Ariz. 326, 492 P.2d 438 (1967), we believe that our case law recognizes a sufficient distinction between personal and substituted service to justify such liberal construction of Rule 4(d)(6), *Schering v. Cotlow; Air East, Inc. v. Wheatley.* We also note that S.S.I., through its president, received actual notice of the suit prior to judgment being entered.

7. A.R.S. § 10–012 provides that:
   Each corporation doing business in this state *shall have and continuously maintain in this state:*
   1. *A known place of business* which shall be the office of its statutory agent, unless otherwise designated in its articles of incorporation or in a statement filed pursuant to § 10–013.
   2. *A statutory agent...* (emphasis supplied.)

the names of the current officers because the corporation maintained no general office. . . .

108 Cal.Rptr. at 834, 511 P.2d at 1186.

Under these circumstances, appellant had one of two choices. She could have properly served the Commission pursuant to A.R.S. § 10–014(B), or she could have served Spitz, as she did, in his purported capacity as vice-president of S.S.I.

■ Appellee contends that service should have been made on the Commission. We do not agree. A.R.S. § 10–014(B) provides that:

> . . . Whenever a corporation shall fail to appoint or maintain a statutory agent at the address shown on the records of the commission, the commission shall be an agent of such corporation upon whom any such process, notice or demand *may* be served. . . . (emphasis supplied.)

In our opinion, the statute is clearly not mandatory in nature; but simply provides an alternative means of effecting service. Thus, service could have been properly made under either of the aforementioned procedures.

■ In light of the above principles, we find that S.S.I. clothed Spitz with ostensible authority to accept service of process. We therefore hold that the trial court erred, as a matter of law, in ruling that it had been without jurisdiction to enter the default judgment.

### MISTAKE, INADVERTENCE OR EXCUSABLE NEGLECT

Since the trial court failed to pass upon the issue of mistake, inadvertence or excusable neglect, we remand the case to the superior court for a determination of this matter.

Judgment reversed.

FROEB, P. J., and DOUGLAS W. KEDDIE, Judge, concur.

NOTE: The Honorable Douglas W. Keddie, Yuma County Superior Court Judge was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to A.R.S.Const. Art. VI, § 3.