IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ADVANCED PROPERTY TAX LIENS, INC.,
AN ARIZONA CORPORATION,**
*Plaintiff/Appellant,*

*v.*

**JORGE OTHON AND SPOUSE OF JORGE OTHON,
IF ANY IN SEPTEMBER 2017,**
*Defendants/Appellees.*

No. CV-21-0277-PR
**Filed April 19, 2023**

Appeal from the Superior Court in Santa Cruz County
The Honorable Denneen L. Peterson, Judge Pro Tempore
No. S1200CV201900192
**REVERSED**

Opinion of the Court of Appeals, Division Two
252 Ariz. 206 (App. 2021)
**VACATED**

COUNSEL:

Barry Becker (argued), Barry Becker, P.C., Phoenix, Attorney for Advanced Property Tax Liens, Inc.

Gregory L. Droeger (argued), Law Offices of Gregory L. Droeger, Nogales, Attorney for Jorge Othon

Ari Ramras, Ramras Legal, PLC, Phoenix, Attorney for Amicus Curiae Land Title Association of Arizona

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.

JUSTICE KING, Opinion of the Court:

¶1　　　Defendant Jorge Othon purchased property from Victalina Carreon but never recorded the deed with the county recorder. The property was encumbered by delinquent property taxes, and Plaintiff Advanced Property Tax Liens, Inc. ("APTL") purchased a tax lien on the property. APTL then filed a tax lien foreclosure action against Carreon, and the trial court entered default judgment.

¶2　　　Now, in this quiet title action, we must determine whether Othon may collaterally challenge the default judgment entered in the separate tax lien foreclosure action. Based on the record before us, we conclude Othon may not.

## I. BACKGROUND

### A. The Property

¶3　　　In late 2014 or early 2015, Othon entered into an oral agreement to purchase a commercial warehouse property (the "Property") from Carreon. Both Othon and Carreon knew the property taxes were delinquent. Understanding that payment of those taxes would eventually fall to Othon, they deducted the outstanding taxes from the purchase price. In purchasing the Property from Carreon, Othon did not sign a promissory note or execute a deed of trust to secure the debt. The only agreement between Carreon and Othon was oral; it was not memorialized in any document. Othon commenced making payments to Carreon in late 2014

or early 2015. Othon paid Carreon for the Property using money on which he had not paid income taxes.[1]

**¶4** In 2015, APTL purchased the tax lien on the Property at a Santa Cruz County tax lien auction, paying the unpaid property taxes and accrued interest. At some point thereafter, Othon attempted to purchase APTL's tax lien, but APTL refused to sell. Othon intended to purchase the tax lien and then foreclose on his own property to hide his failure to pay taxes on the funds used to purchase the Property in the first place.

**¶5** In 2017, Carreon executed a quitclaim deed conveying the Property to Othon, after Othon had paid Carreon the purchase price in full. Othon did not record the deed with the Santa Cruz County Recorder, notify the Santa Cruz County Treasurer or Assessor of his ownership of the Property, or provide a mailing address at which he could be reached. Othon also did not pay the delinquent property taxes.

## B. The Tax Lien Foreclosure Action

**¶6** In January 2018, APTL mailed a pre-litigation notice of intent to foreclose on the Property via certified mail to two addresses it identified as belonging to Carreon, who remained the Property's owner of record: (1) her residential address of public record, and (2) the situs address for the Property. The notice indicated the Santa Cruz County Treasurer was sent a copy of the notice, stating "cc: Santa Cruz County Treasurer." *See* A.R.S. § 42-18202(A) (requiring a tax lien purchaser, "[a]t least thirty days before filing an action to foreclose the right to redeem," to "send notice of intent to file the foreclosure action" via at least one of two distinct methods); *see also 4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 7 (2022) ("By its terms, § 42-18202 delineates two distinct methods of satisfying the pre-litigation notice requirement."); § 42-18202(C)(2) ("A court may not enter any judgment to foreclose the right to redeem under this article until the purchaser sends the notice required by this section."). The Postal Service returned both envelopes, marking them as "Return to Sender, Unclaimed,

---

[1] The Property was vacant at the time of Othon's purchase. But shortly thereafter, Othon rented the Property's warehouse space to three companies—two owned by him and one owned by his brother.

Unable to Forward." APTL purportedly made no further attempts to locate Carreon for purposes of effecting the statutory pre-litigation notice.

**¶7** In May 2018, APTL filed a tax lien foreclosure action against Carreon. APTL attempted to serve Carreon with the summons and complaint at her residential address of public record, but was unsuccessful. The process server stated in his affidavit that Carreon no longer resided at that address, which was "a VACANT and EMPTY HOUSE." The Postal Service indicated Carreon had moved without providing a forwarding address. APTL then effected service by publishing the summons and complaint in the *Nogales International*, a local newspaper. APTL filed an affidavit of publication, indicating to the trial court that it was "necessary to serve [Carreon] by publication." The trial court ultimately determined Carreon was "served in compliance with Rule 4 of the Arizona Rules of Civil Procedure." *See* Ariz. R. Civ. P. 4.1(l)(1) (allowing service by publication "[i]f a party shows that the service provided by Rule 4.1(c) through 4.1(k) . . . is impracticable").

**¶8** APTL asked the trial court to enter default judgment against Carreon, alleging she was properly served but failed to answer. The court entered default judgment. The Santa Cruz County Treasurer issued a treasurer's deed conveying the Property to APTL, and APTL recorded the deed on March 12, 2019.

**¶9** In April 2019, Carreon filed a motion to vacate the default judgment in the foreclosure action on the basis that "service of the summons and complaint was insufficient as a matter of law" and therefore the judgment is void. As part of that motion, Carreon attached an affidavit signed by Othon on April 29, 2019. In his affidavit, Othon falsely disavowed his ownership of the Property, stating that Carreon was the "landlord" of the Property and he was merely "her agent as to the warehouse, collecting rents and overseeing maintenance." Othon further stated in his affidavit, "[a]t no time has either a process server appeared at the warehouse seeking Ms. Carreron [sic], nor has any inquiry been made by any person as to her whereabouts."

**¶10** Subsequently, Carreon moved to withdraw her motion to vacate the default judgment. The trial court granted the motion with prejudice.

### C. This Quiet Title Action

**¶11** On August 21, 2019, APTL filed this quiet title action against Othon, seeking to establish APTL's title to the Property. Othon filed an answer and counterclaim, alleging that he "is seeking quiet title." Therein, Othon requested the trial court deny APTL's claim for quiet title, determine that the default judgment in the foreclosure action was void due to invalid service on Carreon, and declare title to the Property vested in him.

**¶12** APTL and Othon cross-moved for summary judgment. The trial court granted Othon's motion and denied APTL's motion. The court noted the general rule that service of process is personal to the person upon whom service was to be made (here, Carreon in the foreclosure action). But "an insurer has the well-recognized right to raise the issue of defective service of process as to its insured," citing *Koven v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 321–22 (App. 1980), and "Othon's position as to Carreon is similar." The court determined Othon had standing to challenge the default judgment as void for lack of jurisdiction due to insufficient statutory pre-litigation notice and improper service of process on Carreon "because he was the owner of the property at the time of foreclosure pursuant to the deed from Carreon."

**¶13** The court also determined that APTL failed to comply with the pre-litigation notice requirements in § 42-18202 and did not properly serve Carreon in the foreclosure action. Thus, the default judgment in the foreclosure action "is void and did not operate to foreclose Othon's rights."

**¶14** The court of appeals affirmed. *Advanced Prop. Tax Liens v. Othon,* 252 Ariz. 206, 210 ¶ 1 (App. 2021). The court held that, like the insurer in *Koven*, "Othon has 'a definite and substantial interest' in the outcome of the tax lien foreclosure action" because he has a valid unrecorded deed; therefore, he "has standing to defend himself and his right to redeem by collaterally attacking that judgment as void." *Id.* at 213 ¶¶ 18–19. Further, the court held the default judgment in the foreclosure

action was void because APTL failed to comply with the pre-litigation notice requirements in § 42-18202.[2]   *Id.* at 217 ¶ 35.

¶15      We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.      DISCUSSION

¶16      "We review de novo a grant of summary judgment, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion."   *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

### A.   Standing

¶17      The trial court, court of appeals, and parties have addressed the issue here as one of standing—namely, whether Othon has standing in this quiet title action to challenge the default judgment entered in the separate foreclosure action.

¶18      On the issue of standing, we have previously stated that "[a]s a matter of sound judicial policy, . . . this [C]ourt has long required that persons seeking redress in Arizona courts must first establish standing to sue.   The Arizona requirement that plaintiffs establish standing is prudential and constitutes an exercise of judicial restraint."   *Bennett v. Brownlow*, 211 Ariz. 193, 195 ¶ 14 (2005) (internal citation omitted) (citing *Bennett v. Napolitano*, 206 Ariz. 520, 524 ¶ 16 (2003)); *see also Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998) (discussing "standing to bring an action"). "To establish standing, we require that petitioners show a particularized injury to themselves."   *Brownlow*, 211 Ariz. at 196 ¶¶ 17–18 (concluding defendant's conduct "cannot be said to have caused . . . damage to" plaintiff, and thus plaintiff "cannot establish standing to assert her claim").

¶19      However, Othon's answer and counterclaim for quiet title asks that "the Court find that Plaintiff, in Case No. CV-18-128 [the separate foreclosure action], perpetuated a fraud upon that Court, resulting in

---

[2] In light of this decision, the court of appeals stated that it need not decide whether the default judgment was also void on account of improper service of process.   *Id.* at 217 ¶ 35 n.13.

invalid service over the defendant in that case" and "the judgment in Case No. CV-18-128 be voided." Consequently, in this quiet title action, Othon seeks to collaterally attack the default judgment entered against Carreon in the foreclosure action as void.

¶20 Thus, the relevant issue before us in this quiet title action is not whether Othon has standing to bring it. Instead, the more precise issue is whether Othon may use this action to collaterally attack the default judgment entered against Carreon in the foreclosure action as void. *See Tube City Min. & Mill. Co. v. Otterson*, 16 Ariz. 305, 310 (1914) ("The present action is a collateral attack on the judgment of the superior court foreclosing the lien; collateral at least in the sense that the judgment is attacked in a separate action, and not on appeal. It is . . . an effort to obtain another and independent judgment which will destroy the effect of the former judgment."). On this issue, we recently addressed when a judgment or order is subject to attack in a collateral proceeding on the basis that the judgment or order is void—just as Othon seeks to do here. In *Shinn v. Arizona Board of Executive Clemency*, we stated:

> The test for whether an order or judgment is void—and subject to collateral attack—was established nearly a century ago in Arizona. . . . In *Hughes*, we reiterated that "a judgment or order is void upon its face and," therefore, "subject to attack at any time," if the court entering the order or judgment fails to satisfy "three elements." "These elements are (1) jurisdiction of the subject matter of the case, (2) of the persons involved in the litigation, and (3) to render the particular judgment or order entered." If a court fails to satisfy any one of these three elements, the order or judgment is void and subject to collateral attack.

254 Ariz. 255, 262 ¶ 27 (2022) (internal citations omitted) (quoting *Hughes v. Indus. Comm'n*, 69 Ariz. 193, 197 (1949)).

¶21 In discussing the issue of standing, Othon relies on *Koven*. *See* 128 Ariz. at 321. In *Koven*, after a default judgment was entered against the defendant in a personal injury action, the defendant's liability insurer sought to intervene in that same action to set aside the default judgment against its insured. *Id.* at 320–21. The *Koven* court determined the

insurer had "a definite and substantial interest in the outcome of this litigation" and thus had a right to intervene and "raise the issue of defective service of process."   *Id.* at 321.   *Koven* dealt with the right of a liability insurer to intervene in the same action in which default judgment was entered against its insured, because of its status as the insurer.   *Id.* This differs from the scenario before us, where Othon seeks to collaterally attack a judgment entered in a separate proceeding.   Thus, *Koven* does not demonstrate that standing is the applicable legal issue here, though it is useful in illustrating important distinctions in the relationship between Othon and Carreon for our analysis that follows.

¶22        Accordingly, we must now determine whether Othon may, in this quiet title action, collaterally attack the default judgment entered against Carreon in the foreclosure action as void.

### B.  Improper Service of Process on Carreon

¶23        "Any person who is entitled to redeem" a tax lien under A.R.S. §§ 42-18151 to -18155 "may redeem at any time before judgment is entered."   A.R.S. § 42-18206.   Othon did not redeem the Property's tax lien before default judgment was entered in the foreclosure action. Instead, he now collaterally attacks the default judgment entered in the foreclosure action on the basis that Carreon was improperly served by publication.

¶24        "Regarding default judgments, the general rule is that if a court had no jurisdiction because of lack of proper service on the defendant, any judgment would be void."   *Wells v. Valley Nat'l Bank of Ariz.*, 109 Ariz. 345, 346 (1973); *see also Marquez v. Rapid Harvest Co.*, 99 Ariz. 363, 365 (1965) ("If the court had no jurisdiction because of lack of proper service on the defendant any judgment would be void . . . .").

¶25        "In order to obtain a judgment In personam, personal service of the defendant is required."   *Wells*, 109 Ariz. at 347.   Arizona Rule of Civil Procedure 4.1 sets forth the methods for a plaintiff to serve a summons and complaint upon a defendant, including personal service of an individual. *See* Ariz. R. Civ. P. 4.1(d).   But service by publication is also permitted in certain instances.   *See Wells*, 109 Ariz. at 347.   Under Rule 4.1(l)(1), "[i]f a party shows that the service provided by Rule 4.1(c) through 4.1(k)—

including an alternative means of service—is impracticable, the court may, on motion and without notice to the person to be served, order that service be accomplished by publication." As relevant here, "[t]he court may permit service by publication" if, among other things, "the serving party, despite reasonably diligent efforts, has been unable to determine the person's current address" and "the motion is supported by affidavit that sets forth the serving party's reasonably diligent efforts to serve the person." Rule 4.1(l)(1).

¶26 Othon claims, though, that APTL's affidavit in support of service by publication in the foreclosure action was improper because APTL did not make "even minimal inquiry" to determine whether it could serve Carreon at the Property. Further, the allegation in the affidavit "that examination of the [Property] revealed it to be 'empty' was patently false and was a material misrepresentation upon which the trial court . . . relied upon to allow service by publication."

¶27 In the case of service by publication, we have stated that the serving party's "diligence as a fact is prerequisite to the jurisdiction of the court." *Preston v. Denkins*, 94 Ariz. 214, 222 (1963); *see also Lown v. Miranda,* 34 Ariz. 32, 36 (1928). "The jurisdiction of the court to enter any judgment must rest on the affidavit in support of service by publication." *Preston*, 94 Ariz. at 223–24 ("Since this affidavit is ineffective to secure jurisdiction by publication the court necessarily had no power to render judgment against anyone in reliance thereon. The court not only had the power but the duty to expunge from the record the judgment which clearly is void."). Nevertheless, "the general rule is that questions regarding service of process are personal to the person upon whom service was made and cannot be urged by another." *Koven*, 128 Ariz. at 321; *see also* 62 Am. Jur. 2d *Process* § 285 (2023) ("Questions of effective service of process may be raised only by the person upon whom service was attempted.").

¶28 However, this Court has held that an "insurer has the right to set aside a default judgment against its insured, not only on behalf of the insured, but on its own behalf." *Union Oil Co. of Cal. v. Hudson Oil Co.*, 131 Ariz. 285, 288 (1982); *see also Koven*, 128 Ariz. at 321 ("The right of an insurer to move to set aside a default judgment against its insured, either on behalf of the insured or on its own behalf, is well recognized in Arizona." (citing *Camacho v. Gardner*, 104 Ariz. 555 (1969))). This rule is

in place because "the rendition of judgment against the insured . . . not only creates a judgment debt in favor of the injured party, but at the same time it creates a debt under the insurance contract between the judgment debtor and his insurer," and thus "the insurer should have a right to defend against the default judgment." *Sandoval v. Chenoweth*, 102 Ariz. 241, 245 (1967); *see also Camacho*, 104 Ariz. at 558 (stating the insurance company's "remedy is to mo[v]e to have the default judgment set aside" (quoting *Sandoval*, 102 Ariz. at 246)).

¶29 Accordingly, Othon contends that his relationship with Carreon—in the form of a buyer and seller of land—is similar to the relationship between an insurer and insured, citing *Koven*, 128 Ariz. at 321. APTL disputes this contention. We agree with APTL that Othon and Carreon's relationship as a buyer and seller of land is not analogous to that of an insurer and insured.

¶30 The insurer-insured situation presents a "legal representative" relationship whereby the liability insurer has a contractual obligation to defend legal claims brought against its insured. *See Koven*, 128 Ariz. at 321; *see also Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385–86 ¶ 11 (2018) (discussing a "liability insurer's duty to defend"). Further, a liability insurer has exposure in the face of a judgment against its insured. *See Sandoval*, 102 Ariz. at 245 ("It seems to be settled that after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer."). This is the basis for the *Koven* court's determination that the liability insurer had "a definite and substantial interest in the outcome of this litigation." 128 Ariz. at 320; *see also id*. at 320–21 (noting the insurer's "potential liability" and "appellant's threatened garnishment action" against the insurer "to garnish the funds due under the subject insurance policy").

¶31 No such similar relationship involving intertwined interests exists between Othon and Carreon. The relationship between a buyer and seller of land is more properly characterized as one that is adversarial in nature, as it involves two parties on opposite sides of an arms-length transaction. *See, e.g.*, *Dewey v. Arnold*, 159 Ariz. 65, 70 (App. 1988) (discussing reliance on "what the property would sell for between a willing buyer and a willing seller in an arms-length transaction" as the test

for determining fair market value of property (quoting *Honeywell Info. Sys., Inc. v. Maricopa County*, 118 Ariz. 171, 174 (App. 1978))).   As the buyer of the Property and recipient of a quitclaim deed, Othon has no legal duty to protect the interests of the seller from third party legal claims, as in the insurer-insured context.

¶**32**　　　Othon further claims that he and Carreon have a representative relationship similar to that of an insurer and insured on the basis of A.R.S. § 33-435, which addresses covenants that are implied when the words "grant" or "convey" are used in a conveyance.   But Othon received a quitclaim deed that does not contain the words "grant" or "convey."   *See* A.R.S. § 33-402(1) ("To quit claim: For the consideration of …….….., I hereby quit claim to A.B. all my interest in the following real property (describing it).").   To the extent that an implied warranty of title to property, free and clear, can be considered analogous to an insurer's duty to defend and indemnify, it is irrelevant here because no such implied warranty arises from a quitclaim deed.   *See SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 280–81 ¶ 29 (App. 2011) ("'A quit claim deed conveys to the grantee no greater rights to the property conveyed than the grantor possessed . . . .'   Such a deed conveys any interest the grantor possesses in the property, but neither warrants nor claims that title is valid." (citation omitted)).   Therefore, § 33-435 does not establish here a relationship analogous to that of an insurer and its insured.

¶**33**　　　But even if Carreon's quitclaim deed to Othon contained covenants or warranties with respect to the Property, this would only have required *Carreon* (as the grantor) to defend against claims from third parties, not vice-versa.   *See, e.g.*, 163 Am. Jur. Trials 1 *General Warranty Deed* § 8 (2023) ("In the typical wording of a covenant of warranty, the grantor covenants to warrant and defend the title conveyed by the deed against the lawful claims which may be asserted against it by third persons."); *Warranty*, Black's Law Dictionary (11th ed. 2019) ("A covenant by which the grantor in a deed promises to secure to the grantee the estate conveyed in the deed, and pledges to compensate the grantee if the grantee is evicted by someone having better title.").   Thus, in this scenario, it would be Carreon—not Othon—who would be equivalent to the insurer in *Koven*.   Accordingly, Othon's citation to *Phoenix Title & Trust Co. v. Old Dominion Co.*, 31 Ariz. 324 (1927) (discussing warranties from grantors to grantees), does not alter our conclusion.

¶34     Finally, Othon cites *Campbell v. Frazer Construction Co.*, 105 Ariz. 40 (1969), and asks us to apply equitable principles in his favor.   *Campbell* discussed, in the context of a motion to set aside a default judgment, that "two opposing principles of law . . . must be reconciled; on one hand, that the sanctity and finality of judgments be maintained, and on the other that controversies be decided on their merits."   105 Ariz. at 41.   This Court explained,

> In determining whether a defendant should be relieved of a default judgment the court must be guided by equitable principles. These principles require that a defendant be given a fair opportunity to litigate a disputed obligation and also require that a plaintiff, who has, according to regular and legal proceedings, secured a judgment be protected against a violation of the rule which requires the sanctity and security of a valid judgment. When the circumstances are such that it would be extremely unjust to enforce such a judgment, relief will be granted to the extent of allowing defendant a fair opportunity to present the matter on its merits.

*Id.* (quoting *Coconino Pulp & Paper Co. v. Marvin*, 83 Ariz. 117, 120 (1957)).

¶35     We conclude that equitable principles do not weigh in favor of Othon.   In the foreclosure action, Othon signed and submitted an affidavit containing false information, rather than seeking to intervene in that action under Rule 24 or substitute in as a party under Rule 25.   *See* Ariz. R. Civ. P. 24; Ariz. R. Civ. P. 25.   Further, Othon neither recorded the deed with the county recorder, notified the county treasurer or assessor of his ownership of the Property, nor provided a mailing address at which he could be reached.   Moreover, Othon indicated he wanted to purchase APTL's tax lien and then foreclose on his own property to hide his failure to pay taxes on the funds he used to acquire the Property.   Accordingly, this case does not present circumstances where "it would be extremely unjust to enforce [the default] judgment" entered in the foreclosure action. *Campbell*, 105 Ariz. at 41 (quoting *Coconino Pulp & Paper Co.*, 83 Ariz. at 120).

**¶36** We conclude, therefore, that Othon may not collaterally attack the default judgment entered in the foreclosure action.[3]

### III. CONCLUSION

**¶37** For the foregoing reasons, we conclude that Othon may not, in this quiet title action, collaterally attack the default judgment entered in the foreclosure action. We vacate the court of appeals' opinion and reverse the trial court's judgment.

---

[3] When APTL initiated this quiet title action in 2019, Othon argued the default judgment entered in the foreclosure action was void because of APTL's failure to comply with the pre-litigation notice requirements in § 42-18202. But after we issued our decision in *4QTKIDZ*, Othon conceded through counsel at oral argument that APTL complied with § 42-18202 and he was abandoning that issue.